STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| In re: Kibbe Zoning Permit | } | Docket No. 173-8-07 Vtec |
| (Appeal of Lamb) | } | |

Decision and Order

In this appeal, No. 173-8-07 Vtec, Appellant George Lamb appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Weathersfield relating to Appellee-Applicants (Applicants) Christopher and Gail Kibbe's application for a zoning permit to build a single-family residence. Appellant is represented by George T. McNaughton, Esq., Applicants are represented by Lawrence G. Slason, Esq., and the Town of Weathersfield is represented by J. Christopher Callahan, Esq.

Two additional appeals related to this property have been filed with the Environmental Court, but have not been consolidated with the present appeal. In No. 159-7-08 Vtec, Appellant appealed from a decision of the ZBA upholding the Land Use Administrator's decision not to bring an enforcement action; in No. 198-9-08 Vtec, Appellant appealed from the Planning Commission's decision on Applicants' application to amend the 2002 Final Plat to reflect any differences between it and the locations approved in the 2003 State Wastewater Permit, ruling that no such amendment is required.

In the present appeal, after this Court's February 13, 2008 decision and order ruling on a motion to dismiss questions from the Statement of Questions, only Question 10 of the Statement of Questions remained for trial, as to whether the proposed construction is in an "inappropriate soil location."

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. In this de novo proceeding, the Court sits in place of the ZBA to

1

consider what was before the ZBA, applying the substantive standards that were applicable before the ZBA. V.R.E.C.P. 5(g); 10 V.S.A. § 8504(h). The parties were given the opportunity to submit written memoranda and requests for findings. Upon consideration of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows. Some of the undisputed facts stated in the motion decision are also repeated, to the extent helpful for clarity.

Appellant owns an approximately three-acre parcel of property located on the easterly side of Skyline Drive. Appellant's property is bounded on its southerly side lot line by property unrelated to this litigation. It is bounded on its northerly side lot line and on its easterly rear lot line by Applicants' 17.68-acre L-shaped lot, which also has frontage on Skyline Drive adjacent to Appellant's frontage. The wooded area of the property begins approximately 340 feet back from the road; all of the proposed development is proposed for the open area of the property.

Applicants' lot was Lot 3 of a four-lot subdivision known as the Gosselin-Rogers subdivision, the final plat for which was approved in 2002 by the Planning Commission. Issues relating to whether the 2002 final plat requires amendment in order for Applicants to construct their house, garage, driveway and primary septic system in the locations now proposed for those features are the subject of No. 198-9-08 Vtec; they are not before the Court in the present case.

In July of 2003, the State of Vermont Agency of Natural Resources, Department of Environmental Conservation, issued Wastewater System and Potable Water Supply Permit #WW-2-1577 (the 2003 State Wastewater Permit) for the Gosselin-Rogers subdivision, approving septic system designs for Lots 2, 3, and 4. The 2003 State Wastewater Permit shows the proposed house site on Applicants' property as being located approximately 80 feet easterly of Skyline Drive and approximately 200 feet northerly of Appellant's northerly (side) property line. It shows the primary mound for the septic system, that would actually

2

be constructed to serve the proposed house, as being located approximately 160 feet easterly of Skyline Drive and 150 feet northerly of Appellant's northerly property line. It shows a replacement mound, that would not be constructed until or unless the primary mound were to fail, as being located approximately 160 feet easterly of Skyline Drive but only approximately 60 feet northerly of Appellant's northerly side property line.

Applicants purchased Lot 3 of the Gosselin-Rogers subdivision in April of 2006, and applied in June 2007 for the zoning permit that is at issue in the present appeal. Applicants now propose to construct a single-family dwelling and separate garage, with associated primary mound septic system.

The Land Use Administrator determined that the zoning permit application required referral for conditional use approval by the ZBA, under § 6.10.7 of the Zoning Bylaws, due to the location of the proposed development on soils designated by the Natural Resources Conservation Service (NRCS) as either "Prime" or "of Statewide Significance."

Rather than submitting the proposal for conditional use approval by the ZBA, Applicants appealed the Land Use Administrator's decision to the ZBA. Accordingly, the merits of conditional use approval were not ruled on by the ZBA and are not before the Court in this appeal.

Section 6.10.7 provides that "non-agricultural development shall not occur on soils" that have been designated by the NRCS as either prime or of statewide significance, except if such development is "unavoidable" due to steep slopes or wetlands (presumably, occurring elsewhere on the project property). In such a case, § 6.10.7 requires the proposed development to be clustered to maximize the amount of such soils that remain, and requires the project to obtain conditional use approval from the DRB.

The Natural Resources Conservation Service methodology for classifying farmland first classifies the type of soil material (e.g. "Vershire-Dummerston complex," or "Buckland

loam"), and then examines limitations for crop production such as slope, wetness, surface stones, and bedrock outcrops, to place the soil map units in their respective Agricultural Value Groups and, in turn, to rate them as "Prime" farmland, farmland of "Statewide" significance, or other lower ratings. See Exhibit K at 4–9.

Almost the entire front open area of the project property, between the tree line and the road, including all of the project property proposed for development in the present application, is classified as soil map unit 19C. The remainder of Applicants' property, not proposed for development, is classified as soil map units 25C and 25D.

Soil map unit 19C is composed of Vershire-Dummerston complex, rocky and with a slope[1] of between 8% and 15%, which is a category having a rating of Statewide. If the slopes were instead between 15% and 25%, such soils would qualify as soil map unit 19D, which is a lesser rating that does not trigger § 6.10.7 of the Zoning Bylaws.

While the Land Use Administrator was correct to refer the application to the ZBA under § 6.10.7, because the development was proposed on soils which appear on the NRCS maps as Prime or of Statewide significance , the NRCS methodology allows reclassification of soils on a particular parcel after an on-site determination. See Exhibit K at 5. The NRCS Manual for classification of soils specifically refers to "excessive . . . slope" as a justification for reclassification. Id. Applicants are entitled to present evidence of the particular site conditions showing that the soils qualify for reclassification due to their slope. Cf. In re Appeal of Cowan, 2005 VT 126, 179 Vt. 560 (affirming Environmental Court's determination that landowner was entitled to submit engineering surveys to show that a portion of his property was not in the floodplain, contrary to its initial designation on federal floodplain map). An on-site determination on Applicants' parcel shows that only certain limited portions of the area formerly classified as 19C have a slope of less than 15%.

---

[1] Slope is measured perpendicularly to the contour lines.

See Exhibit 1.

Because § 6.10.7 only prohibits non-agricultural development "<u>on</u> soils"[2] (emphasis added) classified as Prime or Statewide, the only areas that must be analyzed in the present case are those soils on which development will occur for the present proposal. With the exception of the area designated for the septic mound systems, all the areas proposed for the development of the house, garage, and driveway have slopes greater than 15%. Those soils are therefore properly classified as having a lesser quality rating, below Prime or Statewide, that does not trigger § 6.10.7 of the Zoning Bylaws for that development, as the term development is defined in § 8 of the Zoning Bylaws.

Only a slight portion of each side of the primary mound's slope is "on" soils less than 15% in slope. If the mound shape or design can be altered slightly to avoid those soils, then, similarly, § 6.10.7 would not be triggered for the construction of the primary mound.

While the replacement mound location is shown "on" soils less than 15% in slope, that is, with the Statewide classification of 19C, no "development" is now being proposed for the replacement mound, as the term development is defined in § 8 of the Zoning Bylaws. Rather, the replacement mound location is only now shown as a location suitable for and approved by the ANR for a replacement septic disposal mound. While Applicants may seek conditional use approval of the replacement mound location under § 6.10.7 if they wish, they need not do so now because it is not now being "develop[ed]." Otherwise, if a replacement mound is developed in the future, as the term development is defined in § 8 of the Zoning Bylaws, either in that location or in any other location on the property, it will need to be considered under the Zoning Bylaws (and ANR Regulations) in effect at

---

[2] Unlike the definition of "primary agricultural soils" in Act 250, 10 V.S.A. § 6001(15), this regulation does not define such soils with reference to entire "soil map units," nor does it require calculation of the average slope of each soil map unit, nor does it require an analysis of the property's size or ability to support an agricultural operation.

5

such time.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that, if the primary mound design is adjusted as discussed above, the present proposal does not propose any non-agricultural development to occur on soils that have been designated as either Prime or of Statewide significance, and therefore that conditional use approval of the present proposal is not required under § 6.10.7 of the Zoning Bylaws.

Dated at Berlin, Vermont, this 6th day of November, 2008.

_____
Merideth Wright
Environmental Judge